

# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs March 21, 2017

## STATE OF TENNESSEE v. MARTIN E. HUGHES

**Appeal from the Criminal Court for Hamblen County**
**No. 15CR284          Alex E. Pearson, Presiding Judge**

_____

### No. E2016-01415-CCA-R3-PC

_____

The Petitioner, Martin E. Hughes, pled guilty to two counts of aggravated assault; introducing contraband into a penal institution; facilitation of possession of a schedule II controlled substance; possession of marijuana with the intent to sell or deliver; possession of drug paraphernalia; a second offense of driving under the influence of an intoxicant; possession of a firearm while intoxicated; and vandalism of property valued under $500. The Petitioner received an aggregate five-year sentence, with credit for time he had served in prison and the remainder of the sentence to be served through the community corrections program. The Petitioner violated the terms of his alternative sentence, and he was sentenced to serve the remainder of the five years in prison. The Petitioner then filed a petition for post-conviction relief. At the hearing on the petition, the Petitioner sought to establish that he had received the ineffective assistance of counsel and that he was entitled to withdraw his guilty pleas as not knowingly and voluntarily entered based on newly discovered evidence in the form of a victim recanting an earlier statement. The post-conviction court found that the Petitioner was not entitled to relief because he received the effective assistance of counsel and because the victim's testimony at the hearing established that the material elements of her statement to police were accurate. On appeal, the Petitioner argues that a delay in the post-conviction proceedings attributable to the State resulted in the loss of a witness's testimony and that his due process right to present his post-conviction claims was violated. After a thorough review of the record, we conclude there is no basis to disturb the Petitioner's guilty pleas, and we affirm the judgment of the post-conviction court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and J. ROSS DYER, JJ., joined.

Jonathan Sevier Cave, Greeneville, Tennessee, for the appellant, Martin Ellison Hughes.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Dan E. Armstrong, District Attorney General; and Connie G. Trobaugh, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## PROCEDURAL AND FACTUAL HISTORY

The Petitioner entered his guilty pleas on January 21, 2014, in Hamblen County. As relevant to this appeal, the Petitioner's aggravated assault convictions were based on an incident in which he pointed a rifle at his ex-girlfriend and her daughter. According to a letter from the supervisor of the community corrections program, a violation warrant was signed on March 12, 2014, after the Petitioner was arrested for multiple aggravated assaults committed in Hawkins County. The Petitioner waived a revocation hearing.[1] His community corrections sentence was revoked on October 14, 2014, and his sentence of five years in confinement was reinstated. He was ultimately convicted of the charges which were the basis of the revocation. *See State v. Marty E. Hughes*, No. E2015-01907-CCA-R3-CD, 2016 WL 7428733, at *1 (Tenn. Crim. App. Dec. 23, 2016) *no perm. app. filed* (vacating sentences based on violation of the right to counsel at sentencing and remanding for the opportunity to file a new motion for a new trial).

On March 20, 2015, the Petitioner filed a petition for post-conviction relief, seeking to overturn his guilty pleas based on the ineffective assistance of counsel and on newly discovered evidence. He alleged that the statements of the two victims of the Hamblen County aggravated assaults had been changed by law enforcement and that his attorney improperly advised him to plead guilty. He also raised errors with the revocation procedures and with the conditions of his confinement.

---

[1] While the issue is not raised on appeal and the Petitioner at the post-conviction hearing specifically stated that he did not seek a new revocation hearing, we note that we have concerns regarding the circumstances of the Petitioner's waiver of the revocation hearing. According to the Petitioner's allegations and the testimony of the Petitioner and the supervisor of the community corrections program, the Petitioner was advised by the community corrections officer that he could either waive the revocation hearing and serve his sentence or request a hearing and attorney. When the Petitioner asked for the advice of counsel regarding the waiver of the hearing, he was told that if he requested counsel, he would no longer be able to waive the hearing and his sentence could be increased to the maximum allowed by law. While the post-conviction court found that the Petitioner "ultimately had a hearing," the transcript of that hearing in the record shows that the Petitioner was not represented by counsel but simply had a colloquy with the trial court regarding a motion he filed for a hearing and regarding the basis of his revocation.

The post-conviction court appointed counsel to represent the Petitioner.[2] On October 7, 2015, the State moved to dismiss the petition based on the statute of limitations. The record contains the post-conviction court's order documenting the Petitioner's complaint that his first post-conviction attorney refused to have contact with him and mandating that the attorney receive a copy of the Petitioner's complaint. On February 1, 2016, the post-conviction court dismissed the petition based on the limitations period because the Petitioner had failed to assert any basis for finding that the petition was timely filed. The Petitioner objected to the dismissal of his post-conviction petition, asserting that his mail was being thrown away at the jail, that his first two attempts to file handwritten post-conviction petitions were "lost, destroyed, or thrown away," and that his outgoing legal mail was recovered on two occasions from a trashcan. On February 19, 2016, the post-conviction court entered an order allowing the post-conviction action to proceed and appointing new counsel for the Petitioner.

The Petitioner's new counsel amended the post-conviction petition, asserting that due process should toll the statute of limitations, that the pleas were not knowingly and voluntarily entered because the Petitioner's decision was based on law enforcement's malfeasance in changing witness statements, and that he received the ineffective assistance of counsel when his attorney advised him to plead guilty.

The Petitioner's post-conviction hearing was held on June 24, 2016, and the court first addressed the issue of timeliness. The Petitioner testified that he first attempted to file a post-conviction petition on October 22, 2014. He introduced into evidence an envelope with a handwritten date and testified that the handwritten date was his only means of tracking his mail in the local jail. The hearing transcript reflects that, although missing from the record on appeal, the contents of the envelope were also introduced. The post-conviction court found that the Petitioner attempted to file a timely petition and accordingly proceeded to consider the merits of the Petitioner's claims.

The Petitioner's aggravated assault convictions were based on displaying a rifle to the two victims, the Petitioner's ex-girlfriend and her teenage daughter, and causing them to reasonably fear imminent bodily injury. The Petitioner alleged that his trial counsel did not share discovery with him and that his plea was based on a statement from the victims which had been either coerced or altered by law enforcement.

The Petitioner testified that in late May or early June 2014, his ex-girlfriend visited him in jail and asserted she had never made the statement that he had pointed a gun at her and threatened her. He identified the statement as one which had been "read to

---

[2] The post-conviction court later found that the performance of the Petitioner's first post-conviction attorney "was unsatisfactory."

[him] in open court." The Petitioner testified that he pled guilty based on the State's anticipated evidence as outlined in his ex-girlfriend's statement. The Petitioner further testified that the delay occasioned by his inability to file a post-conviction petition due to the jail's negligence and that the further delay occasioned by his first post-conviction counsel's refusal to contact him caused him to lose the testimony of Steve Johns, who died in "late May." The year in which Mr. Johns died was not specified. The Petitioner asserted that Mr. Johns could have testified about the circumstances of the crime and could have confirmed that the Petitioner did not make a threatening statement and was not found with a weapon. We note that, at the plea colloquy, the Petitioner stated that he was not arrested with the rifle but it was "found … in the yard later." According to the Petitioner, Mr. Johns could, moreover, have testified that the Petitioner's ex-girlfriend told him during a jail visit that she never made the statement in question.

At the hearing, the Petitioner was shown the statement that his ex-girlfriend made to law enforcement. According to the statement, the Petitioner came up his ex-girlfriend's driveway at around 11:30 p.m. on April 12, 2012, and she asked him to leave. The Petitioner then started "mumbling," and she and her daughter, who had been in the doorway, retreated into the house as he approached. The two victims discussed calling the police, then heard a tapping on the glass part of the door. The Petitioner "was standing there aiming a gun in [their] direction." The Petitioner's ex-girlfriend stated that the Petitioner had undergone changes since becoming addicted to crack cocaine, that he was "mentally unstable," and that she thought "he was going to kill us" and was in fear for herself and her daughter.

The Petitioner then testified that he had never seen his ex-girlfriend's statement to police prior to the post-conviction hearing. Instead, he referenced another statement that was "read in open court and that appeared on the front page" of the newspaper. This statement apparently quoted him as having said he would "blow[] the baby out of" his ex-girlfriend's daughter, who was pregnant.

The Petitioner reiterated that he never received a hard copy of the statement made to law enforcement in discovery but acknowledged that trial counsel reviewed the statement with him and that he decided to plead guilty based on the statement. He testified that he decided that he should plead guilty even if he was not guilty of the charges because he anticipated that the State would introduce the statement at his trial. The Petitioner acknowledged that at the plea hearing, he agreed that the discovery materials were a fair indication of the State's case against him, but he explained that he was "just saying 'yes' to everything."

The Petitioner stated he was not told the full consequences of his plea and did not understand them. The Petitioner did not deny that he was told at the plea hearing that if

he violated the terms of his community corrections, he could be resentenced and serve time in prison. He stated that he accepted the plea agreement because he thought the State would be able to use the statement purportedly made by his ex-girlfriend.

The Petitioner's ex-girlfriend testified that she made a statement to Detective Bob Ellis on April 13, 2012. She identified the statement, and she confirmed that her statement to Detective Ellis was true. However, she clarified her statement by saying that while she "probably" told Detective Ellis that the Petitioner "might have mumbled," she did not believe that the Petitioner actually said anything to her. She stated that the Petitioner's mouth was moving, but she did not hear him say anything.

The Petitioner's ex-girlfriend acknowledged visiting him in jail around April 2014, but she did not recall telling him about a statement she made which was untrue. She testified, however, that the account of events published in the newspaper was "blown out of proportion." She did not know the source of the statement which appeared in the newspaper that the Petitioner had threatened to "blast the baby out of" her pregnant daughter, but agreed that the newspaper account was "exaggerated."

The Petitioner's ex-girlfriend's daughter, who was sixteen or seventeen at the time of the assault, stated that she could hardly recall the events of the night and never gave a statement to the police. She recalled that some portion of the story which was printed in the newspaper was not true. She did not know who had made the statements to the newspaper.

The Petitioner's trial counsel testified that the Petitioner had wanted to dispute the two aggravated assault charges because he did not believe that the victims would testify against him. The Petitioner contested the statement which his ex-girlfriend gave police. The prosecution offered a plea agreement which included pleading guilty to these charges and serving a three-year sentence on them which was concurrent with a three-year sentence for introducing contraband into a penal institution. The bulk of the Petitioner's sentence was to be served on community corrections. The Petitioner chose to plead guilty to the assault charges because they were part of the plea package. Trial counsel testified that he did not specifically recall reviewing discovery with the Petitioner but that it was his normal practice to do so, and he agreed that he told the trial court at the plea hearing that he had gone over the discovery with the Petitioner "many times."

Larry Yount, the District Supervisor for the community corrections program, testified regarding the circumstances of the Petitioner's waiver of the revocation hearing.

The post-conviction court denied relief. The court found that the Petitioner had presented nothing to impeach the credibility of the victims or to indicate they were not

telling the truth. The post-conviction court further found that trial counsel had reviewed the discovery, including the Petitioner's ex-girlfriend's statement to police, with him. The court found that trial counsel discussed the consequences of the plea with the Petitioner. The post-conviction court concluded that trial counsel's performance was not deficient, that the pleas were knowingly and voluntarily entered, and that the Petitioner was not entitled to relief.

## ANALYSIS

On appeal, the Petitioner now asserts that he was denied his due process right to present evidence which would support his claims for post-conviction relief, pointing to the death of Mr. Johns while post-conviction proceedings were pending. He asserts that he is entitled to have his convictions set aside because the State occasioned the delay that resulted in a due process violation. The State, in its response, conflates the Petitioner's due process argument on appeal with his argument in front of the post-conviction court that his late-filed post-conviction petition was entitled to due process tolling. The State argues that the Petitioner was granted the relief he requested, making his argument moot. The State also notes that the Petitioner received a full and fair hearing and that the evidence did not establish that he received the ineffective assistance of counsel or that his pleas were not knowing and voluntary.

A petitioner is entitled to post-conviction relief when a conviction or sentence is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. The petitioner bears the burden of proving the allegations of fact in the petition by clear and convincing evidence. T.C.A. § 40-30-110(f). Evidence is clear and convincing when the correctness of the conclusions drawn from the evidence admits no serious or substantial doubt. *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009).

The findings of fact made by a post-conviction court are conclusive on appeal unless the evidence preponderates against them. *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). This court may not substitute its own inferences for those drawn by the post-conviction court, and questions concerning the credibility of witnesses, the weight and value of the evidence, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). A claim of ineffective assistance of counsel raises a mixed question of law and fact which this court reviews de novo. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). The trial court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *Id.*

We observe initially that the Petitioner testified that Mr. Johns witnessed the victim's alleged statement that law enforcement altered or coerced her statement to police. However, the Petitioner at no time presented the post-conviction court with the argument that the proceedings were unreasonably delayed by the State and that this delay amounted to a due process violation which prejudiced him through the loss of the witness.

"A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented" except when it is based on a new constitutional right requiring retroactive application or if it was not presented due to State action which constitutes a constitutional violation. T.C.A. § 40-30-106(g). This court generally does not consider issues which were not presented to the post-conviction court and are raised for the first time on appeal. *See Butler v. State*, 789 S.W.2d 898, 902 (Tenn. 1990); *see also Johnny O. Clark v. State*, No. W2001-02856-CCA-R3-PC, 2002 WL 1841630, at *7 (Tenn. Crim. App. Aug. 8, 2002) ("Issues not presented in a post-conviction petition and raised for the first time on appeal are waived." (citation omitted)); *State v. Townes*, 56 S.W.3d 30, 35 (Tenn. Crim. App. 2000), *overruled on other grounds by State v. Terry*, 118 S.W.3d 355, 359 (Tenn. 2003). While this court has reviewed issues when they were not raised in the petition but presented to the post-conviction court, we have has also refused to review issues raised for the first time on appeal. *See Timothy Lamont Thompson v. State*, No. M2015-00846-CCA-R3-PC, 2016 WL 496996, at *4 n.1 (Tenn. Crim. App. Feb. 9, 2016), *perm. app. denied* (Tenn. June 23, 2016) (citing cases where appellate review was granted to an issue raised in post-conviction hearing but denied when the issue was not raised at the hearing).

We conclude that the issue here was waived. The post-conviction court was not given the opportunity to make any factual determinations regarding the length or cause of any delay or regarding any prejudice which may have accrued to the Petitioner. We note here that the Petitioner cites no authority for granting a new trial based on the violation of a due process right to present evidence in a post-conviction hearing which was occasioned by a delay in the proceedings. Instead, the Petitioner cites to cases that stand for the proposition that a post-conviction petitioner may have a due process right to present a claim to the post-conviction court, as the Petitioner here was able to do. *See Reid v. State*, 197 S.W.3d 694, 702 (Tenn. 2006) ("Due process requires only that a petitioner be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner."); *Burford v. State*, 845 S.W.2d 204, 210 (Tenn. 1992).

The Petitioner in the case at bar did not present the post-conviction court with an opportunity to make any findings regarding the delay, its cause, or the prejudice, if any, occasioned by the delay. Moreover, the Petitioner cannot demonstrate prejudice because

his ex-girlfriend's testimony at the hearing was that her statement to Detective Ellis was true in all material respects.[3] The proof at most showed that a newspaper printed an inaccurate account of the assaults and that the victims acknowledged that the newspaper account was incorrect. Mr. Johns may have been able to impeach the credibility of the Petitioner's ex-girlfriend regarding her statements at the jailhouse but could not have contradicted her sworn affirmation that the Petitioner pointed a rifle at the victims on the night of the offense, causing them to fear imminent bodily injury. While we accordingly note that the Petitioner cannot demonstrate prejudice, we conclude that the issue is waived for failure to present it to the post-conviction court.

The post-conviction court found that trial counsel was not deficient and that the pleas were knowing and voluntary because trial counsel reviewed the victim's statement to Detective Ellis with the Petitioner and because the Petitioner acknowledged that he was aware of the contents of the statement, which his ex-girlfriend affirmed was true at the hearing, at the time he entered his pleas. The Petitioner does not contend that the post-conviction court erred in determining that his trial counsel was not deficient in his representation, *see Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011), or that his pleas were knowingly and voluntarily entered, *see Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). We accordingly affirm the denial of relief.

## CONCLUSION

Based on the foregoing analysis, we affirm the judgment of the post-conviction court.

_____
JOHN EVERETT WILLIAMS, JUDGE

---

[3] The post-conviction court specifically found that the victims may have been upset that the Petitioner was imprisoned and that they may have told him something "outside of court or…when [he was] in some room with them," but that their testimony under oath was consistent with the discovery that the Petitioner received.